# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00842-COA

NORMAN L. NEYLAND, AS ADMINISTRATOR OF THE ESTATE OF MARY CORY GALLAGHER, DECEASED

APPELLANT

v.

TIMBERLAND MANAGEMENT SERVICES, INC. AND MICHAEL J. DAUGHDRILL

APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 04/22/2013 |
| TRIAL JUDGE: | HON. LILLIE BLACKMON SANDERS |
| COURT FROM WHICH APPEALED: | WILKINSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN H. OTT |
| ATTORNEYS FOR APPELLEES | GARY L. HONEA |
| | JOHN BENJAMIN ROWLEY |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT GRANTED TO APPELLEES |
| DISPOSITION: | REVERSED AND REMANDED: 10/28/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, P.J., ROBERTS AND CARLTON, JJ.

### GRIFFIS, P.J., FOR THE COURT:

¶1. This appeal considers whether the circuit court correctly granted a summary judgment based on the statute of limitations. We find reversible error and remand for further proceedings.

### FACTS

¶2. Mary Cory Gallagher owned land in Amite County, Mississippi. Veronica F. Carber was Gallagher's caretaker and nurse. On November 28, 2001, Gallagher granted Carber a

general power of attorney.

¶3.     On May 14, 2002, Carber executed a contract with Timberland Management Services, Inc., to harvest pine and hardwood timber on a portion of her property. Timberland's president, Michael J. Daughdrill, executed the contract. It granted Timberland the right to harvest "all pine north of the [Bluff Springs Road] and selectively marked hardwood timber." The contract specified types of trees to be harvested, set forth a price schedule for the various types of trees to be harvested, and specified that "Timberland will charge 8% for their service."[1]

¶4.     In a written prospectus provided with the contract, Timberland estimated the timber on the Gallagher lands to be worth $241,519.60. This included a financial analysis of 230.5 acres of Gallagher's property in both Amite and Wilkinson Counties. The terms of the contract, however, allowed Timberland to harvest timber on approximately seventy-two acres of property located north of Bluff Springs Road in Amite County.

¶5.     Gallagher died on February 2, 2003, at her home in Baton Rouge, Louisiana. Her death occurred before the Timberland contract was completed. After Gallagher's death, Carber was appointed trustee of the Mary C. Gallagher Revocable Living Trust. Timberland received its final instructions, to complete the contract, from Carber after Gallagher's death.

---

[1]  Timberland also represented to this Court that it also charged a standard $400 per day supervision fee for land development and reforestation projects. The parties dispute whether that charge was made clear in the contract.

¶6. Timberland completed the contract work by September of 2003. Timberland, under the instructions of Carber, also performed "two remedial projects" on Gallagher's property to repair property damage from Hurricane Katrina as well as a fire caused by Gallagher's neighbor. These remedial projects were performed in 2005 and 2006 and were paid for by separate insurance funds that covered the damages.

¶7. On January 2, 2005, Timberland received a request from the Gallagher Estate, through the Internal Revenue Service, for an accounting of the estate funds expended for work performed under the contract. On February 15, 2005, Timberland's accountant, Wayne Hutchinson, provided a partial accounting of the contract to the IRS office in New Orleans to comply with this request. The accounting indicated a balance of $88,697.91. When the final accounting was completed, as a part of this litigation, the remaining charges of $90,455.33 were paid for Daughdrill's supervision fees, materials, equipment, and contractor charges. A balance of $1,757.42 was due Timberland from the Gallagher Estate.

¶8. On March 16, 2007, Norman L. Neyland was appointed as administrator of the Estate of Mary C. Gallagher when it was opened in Louisiana. Neyland sought to set aside certain conveyances, which had been executed by Carber, of seven tracts of Gallagher's land that would pass to Carber, individually, at Gallagher's death. Carber died in February 2008.

¶9. On April 1, 2010, Neyland filed a complaint against Timberland and Daughdrill. The complaint asserted claims for breach of contract, fraud, conspiracy, conspiracy to commit fraud, breach of the duty of good faith and fair dealing, failure to account and conversion of escrowed funds, constructive trust, and unjust enrichment. Neyland alleged that Timberland

3

and Daughdrill breached the contract by harvesting timber outside of the approximately seventy-two acres designated by the contract in Amite County, made unauthorized expenditures for work outside of the contract, and failed to account for or pay all sums due under the contract.

¶10.    After discovery, Timberland and Daughdrill filed a motion for summary judgment. The motion argued that the complaint was barred by the statute of limitations and cited Mississippi Code Annotated section 15-1-73 (Rev. 2012).  The motion also argued that the claims related to the harvesting contract accrued when the totality of the work under the contract was completed, which Timberland and Daughdrill contended occurred on or about September 1, 2003.

¶11.    In response, Neyland argued that the statute of limitations was tolled based on the deposition testimony of Daughdrill and Hutchinson that established that Timberland depleted the proceeds in the escrow account for the benefit of the Gallagher Estate despite their misrepresentation to the IRS that the funds were still in the estate in 2005.  Daughdrill claimed that Carber allowed him to spend the funds in the escrow account on the business, although he had no written documentation of that agreement.  Neyland also argued that the claims asserted were governed by a six-year statute of limitations and cited section 15-1-73. In addition, Neyland argued that the claim for fraudulent concealment by Timberland and Daughdrill was not exposed until 2011.

¶12.    On April 25, 2013, the circuit court entered an order that granted summary judgment. The court ruled that the case should be dismissed based on the failure to file within the six-

4

year statute of limitations under Mississippi Code Annotated section 75-2-725 (Rev. 2002). It is from this judgment that Neyland now appeals.

## STANDARD OF REVIEW

¶13.    The grant of a motion for summary judgment is reviewed de novo. *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013). We view the evidence "in the light most favorable to the party against whom the motion has been made." *Id.* The supreme court has held:

> Summary judgment is appropriate and shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law. Importantly, the party opposing summary judgment may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in [Mississippi Rule of Civil Procedure 56], must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be entered against him.
>
> This Court has explained that in a summary judgment hearing, the burden of producing evidence in support of, or in opposition to, the motion is a function of Mississippi rules regarding the burden of proof at trial on the issues in question. The movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to [a] judgment as a matter of law. The movant bears the burden of production if, at trial, he would bear the burden of proof on the issue raised. In other words, the movant only bears the burden of production where [the movant] would bear the burden of proof at trial. Furthermore, summary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 88-89 (¶¶10-11) (internal quotation marks and citations omitted).

## ANALYSIS

5

¶14.  The question before the Court is whether the statute of limitations expired before the complaint was filed.

¶15.  Although our review is de novo, we start with the circuit court's order granting summary judgment.  The court ruled:

FACTUAL BACKGROUND

Upon considering the motion for summary judgment, the trial court has been presented with the following facts:

1.  Mary Cory Gallagher owned real property in Amite and Wilkinson Counties, Mississippi.

2.  Mary Cory Gallagher and her caregiver, Veronica Carber, entered into a comprehensive land management and timber harvesting contract with Timberland on May 10, 2002.  The projected completion date was approximately two years.

3.  Mrs. Gallagher died on February 5, 2003[,] in Baton Rouge, Louisiana.

4.  The work was completed on or about September 1, 2003[,] with the exception of two projects in 2005 and 2006.

5.  Mrs. Carber died on February 2008.

6.  This suit was filed on April 1, 2010.

. . . .

The climax in this controversy was reached when this matter was properly brought before this court at the summary judgment hearing.  The Plaintiff has not adduced any testimony to show that there were genuine issues as to any material facts or law. The evidence submitted by Plaintiff is inadequate to support its opposition to Defendants' summary judgment motion.

ARGUMENT

I.  THE STATUTE OF LIMITATIONS HAS EXPIRED ON THIS

CLAIM.

> The contract between Mrs. Gallagher and Timberland was executed on May 10, 2002. This action was filed on April 1, 2010, which is approximately eight years after this contract was executed. It is undisputed by [the] parties that this action is governed by a six-year statute of limitations. Miss. Code Ann[.] § 72-2-725 [sic]. Therefore, it is clear that the statute of limitations [has] expired on this claim. Furthermore, the exception to the statute of limitations does not apply in this matter because Neyland was aware of the alleged future breaches when he filed an action on or about April 2, 2007[,] against Veronica Carber, the caregiver, in Wilkinson County Chancery Court, which alleged many of the same factual allegations that are in this case. However, Neyland failed to bring a suit against Timberland during that time. It is unknown to the court as to why a suit was not filed by the [P]laintiff against the [D]efendants in 2007. Because the Plaintiff did not bring this suit within the requisite time frame provided by law, the Defendants' motion should be granted.

### CONCLUSION

> The Plaintiff was aware of the alleged future breaches that occurred in this case before the statutory period expired. The Plaintiff has failed to present evidence that is sufficient to fall under an exception to the statute of limitations in this matter. For the foregoing reasons, Timberland is entitled to judgment as a matter of law and the Court grants summary judgment in its favor.

¶16. We begin with the trial court's finding that "[i]t is undisputed by parties that this action is governed by a six-year statute of limitations. Miss. Code Ann[.] § 72-2-725 [sic]." This does not appear to be accurate.

¶17. In the motion for summary judgment, Timberland and Daughdrill specifically cited Mississippi Code Annotated section 15-1-73.[2] Then, at the hearing on the motion, the

---

[2] Section 15-1-73, titled "New promise to be in writing; effect of new promise by one or more joint contractors as against non-promisors," provides:

> In actions founded upon any contract, an acknowledgment or promise shall not be evidence of a new or continuing contract whereby to take any case out

7

attorney for Timberland and Daughdrill argued that the claims asserted were governed by the three-year catch-all statute of limitations, which is Mississippi Code Annotated section15-1-49 (Rev. 2012).[3] Their attorney then argued that, regardless of which statute of limitations is applied, the limitations period expired before the complaint was filed.

¶18. Neyland's counsel argued that the applicable limitations period was under the Uniform Commercial Code, specifically section 75-2-725.[4] This argument was based on the

---

of the operation of the provisions of this chapter or to deprive any party of the benefit thereof, unless such acknowledgment or promise be made or contained by or in some writing signed by the party chargeable thereby. Where there shall be two or more joint contractors, one or more of them shall not lose the benefit of the provisions of this chapter so as to be chargeable, by reason only of an acknowledgment or promise made or signed by any other or others of them. In actions against joint contractors, if the plaintiff be barred as to one or more of the defendants but be entitled to recover against any other or others of them, by virtue of a new acknowledgment or promise, or otherwise, judgment shall be given for the plaintiff as to any of the defendants against whom he is entitled to recover, and for the other defendants against the plaintiff.

[3] Section 15-1-49, titled "Limitations applicable to actions not otherwise specifically provided for," provides in relevant part:

(1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.

(2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

[4] Section 75-2-725, titled "Statute of limitations in contracts for sale," provides in relevant part:

fact that the UCC applies to "transactions in goods." Miss. Code Ann. § 75-2-102 (Rev. 2002). "'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid." Miss. Code Ann. § 75-2-105(1) (Rev. 2002). The UCC further defines "goods" to include "standing timber that is to be cut and removed under a conveyance or contract for sale." Miss. Code Ann. § 75-9-102(a)(44)(ii) (Rev. 2002).

¶19.     Despite this difference in the argument, the trial court determined that there was no dispute as to the governing statute of limitation and applied the six-year statute, Mississippi Code Annotated section 75-2-725. The resolution of this appeal will be decided based on whether there is a genuine issue of a material fact in dispute as to whether the limitations period was tolled by the defendants' fraudulent concealment. Neyland argues that the limitations period was tolled by Timberland's fraudulent concealment of the initial act of fraud – the misrepresentation that the proceeds due to the Gallagher Estate were in an escrow account when Timberland had actually depleted the funds.

¶20.     If the defendant fraudulently conceals a cause of action, then the cause of action is

---

(1)  An action for breach of any contract for sale must be commenced within six (6) years after the cause of action has accrued.

(2)   A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

9

deemed to accrue at "the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered." Miss. Code. Ann. § 15-1-67 (Rev. 2012). To prove fraudulent concealment, the plaintiff must show (1) the defendant engaged in an affirmative act or conduct designed to prevent, and which does prevent, discovery of a claim, and (2) due diligence was performed on the plaintiff's part to discover the defendant's fraud. *Stephens v. Equitable Life Assurance Soc'y of the U.S.*, 850 So. 2d 78, 83-84 (¶18) (Miss. 2003).

¶21.    Neyland argues that there was evidence that Timberland and Daughdrill fraudulently concealed $88,697.91 in proceeds to the Gallagher Estate. As a result, Neyland claims that, through reasonable diligence, he discovered the fraud after Hutchinson, Timberland's CPA, represented to the IRS, in a February 15, 2005 letter, that Timberland "holds $88,697.91 of the Gallagher [E]state proceeds in its escrow account." At his deposition, Hutchinson testified:

> Q.    Now in your letter – you and you sent all this information to the IRS?
>
> A.    Yes, sir. First of all, my letter is to Ms. Nance and says: We are in receipt of your letter dated January 27, 2005 – which is the Internal Revenue notice that was sent to Mr. Daughdrill – please find the following enclosed: A packet of timber agreements – which I've given you that copy – a timber recap sheet showing gross timber sales, expenses of sale, expenses of restoration and reforestation and payments to Ms. Gallagher. Attached to this recap sheet are individual timber tickets and copies of the expenses. At that time, I was told that we held that $88,000.00 in the escrow account.
>
> Q.    You were told by whom?
>
> A.    By Jane and Mike Daughdrill.

10

Hutchinson testified further that neither Timberland nor Daughdrill was entitled to the funds in escrow:

> Q. In figuring it in an income tax return, for example, the $88,000.00 approximate figure, would that have been included as income on an income tax return?
>
> . . . .
>
> A. No.
>
> Q. So do you remember how you handled that money as far as –
>
> A. Well, they had an escrow balance. In other words, the money would be in the bank, and there would be an escrow account balance that the money was due to someone, so that would be the offset.
>
> Q. So, obviously, Timberland wouldn't pay taxes on it because it's somebody else's, correct?
>
> A. Correct.

¶22. Daughdrill was aware that the funds were actually never placed in an escrow account. He testified:

> Q. Now, this $88,000.00 was supposed to be put up on an escrow account?
>
> A. We had talked about – my secretary and I talked about putting it in the First Bank account. That's how that came out. But later, when I talked to her and found that it had not been, the reason being is that every week we were drawing it down, paying for services. So it was a moot point to just go put it in the bank, because it wasn't going to stay in the bank. We were using it.
>
> . . . .
>
> Q. So in 2004, it was gone?
>
> A. Yes, sir.

11

¶23. The following discussion occurred at the summary-judgment hearing, which acknowledges that Timberland's and Daughdrill's actions constituted fraudulent concealment:

| | |
|---|---|
| Counsel for Neyland: | And based on the Fraudulent Concealment of Claim Statute, Section 15-167 [sic], the law specifically says that if a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of the action shall be deemed to be first accrued at and not before the time at which such fraud shall be first known or discovered. |
| | |
| | This was first known or discovered during the depositions of Mr. Daughdrill and Mr. Hutchinson, which just happened last year. So, even if the six-year statute of limitations doesn't apply, regardless of which statute of limitations applies, then we would contend that it's been tolled until last year when this information came to light through the discovery process of this case. |
| | |
| | . . . . |
| | |
| Counsel for Timberland: | But, Your Honor, the main thing is that in '05, when they saw that letter to the [IRS], they could have used reasonable diligence then to determine if anything had gone wrong with the money. He could have sued Mr. Daughdrill in that suit. |
| | |
| COURT: | But the problem is, if you see a letter to the [IRS] and you give somebody a copy of that letter to somebody and you say that this is in a timber account you have eighty-eight thousand dollars ($88,000.00), I would expect to go to that timber account – at the time they wrote the letter saying the eighty-eight thousand dollars ($88,000.00) was there and it was gone already. |

12

. . . .

COURT: But they didn't know. Obviously nobody knew that the money wasn't in the timber account. If they had known – if they had gone to the account and looked in it and said that there was nothing in that timber account; it's all been spent already, then the statue of limitations would have started to run. But if you told me that in my timber account, I am holding eighty-eight thousand dollars ($88,000.00), and I don't go over there and check behind you, and then I discover five years later that there is nothing in this timber account and it was gone at the time you told me – that's the problem, the money was gone when he told them that it was there.

. . . .

COURT: He knew when he gave the [IRS] a letter in 2005 saying that there was eighty-eight thousand dollars ($88,000.00) in this account, that there was zero in that account, whatever account it was, because he had spent it all.

. . . .

COURT: That would be fraud.

Counsel for Timberland: Well, but then what's the statute of limitations? You're saying from the point of discovery is what you're saying, Your Honor?

COURT: Right.

Counsel for Timberland: Okay.

COURT: Right. They're sitting there thinking that there's eighty-eight thousand dollars ($88,000.00) in this account. There's nothing that requires them to go out and look at it or draw it out right then. You

13

ought to be able to get it out of the account whenever you get ready. It's your money. That's where his problem is.

¶24. Both Hutchison and Daughdrill acknowledged that the proceeds from the contract for timber harvesting were placed in an escrow account for the benefit of the Gallagher Estate, only to be depleted by Timberland by 2004. Although Daughdrill testified that Carber agreed to allow Timberland to keep the funds in escrow to put back in the property, he had no written proof of that agreement.

¶25. Neyland thus argues that the depleted escrow account was not discovered until this litigation was filed, as Timberland misrepresented to the IRS the amount in the account in 2005. However, if Neyland checked the account and discovered the fraud in 2005, then the statute of limitations would have started to run then. If this action is governed by the six-year statute of limitations, Mississippi Code Annotated section 75-2-725, it was timely filed. Neyland was not appointed administrator of the Gallagher Estate until 2007 after he challenged Carber's rights as trustee of Gallagher's estate.

¶26. We find that Neyland has presented sufficient evidence to establish the presence of a genuine issue of material fact as to whether the fraudulent concealment of the escrow funds and Neyland's due diligence to discover that fraud tolled the six-year statute of limitations in this matter. As a result, we hold that the circuit court erred in finding that the six-year statute of limitations had expired.

¶27. Further, although Neyland also argues that the circuit court erred in its failure to find that the discovery rule and the continuing-tort doctrine tolled the statute of limitations, as

14

well as its failure to find a genuine issue of material fact related to the other claims, we do not consider these issues. Instead, we find that Neyland has presented sufficient evidence to indicate the circuit court erred in granting summary judgment based on the expiration of the limitations period under section 75-2-725. Therefore, we reverse the summary judgment and remand for further proceedings consistent with this opinion.

¶28. **THE JUDGMENT OF THE CIRCUIT COURT OF WILKINSON COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.**

**LEE, C.J., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**