## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2020-CA-01049-COA

JOHN PRYSTUPA                                                        APPELLANT

v.

RANKIN COUNTY BOARD OF SUPERVISORS                          APPELLEES
AND PEARL RIVER VALLEY WATER SUPPLY
DISTRICT

DATE OF JUDGMENT:              06/04/2020
TRIAL JUDGE:                   HON. STEVE S. RATCLIFF III
COURT FROM WHICH APPEALED:     RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        CHRISTOPHER JACKSON WELDY
ATTORNEYS FOR APPELLEES:       ROBERT O. ALLEN
                               WILLIAM 'TREY' JONES III
                               JACOB O. MALATESTA
                               NORMAN ELVIN BAILEY JR.
NATURE OF THE CASE:            CIVIL - PROPERTY DAMAGE
DISPOSITION:                   AFFIRMED - 05/10/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.

### McDONALD, J., FOR THE COURT:

¶1.     John Prystupa appeals the Rankin County Circuit Court's dismissal of the complaint he filed against the Rankin County Board of Supervisors (Rankin County) and the Pearl River Valley Water District (PRV) for flooding damage to his rental property. He had alleged that the damage was due to their negligent maintenance of the storm drainage system. On appeal, Prystupa argues that the dismissal was improper because the statute of limitations was tolled by the discovery rule. Prystupa also claims that the circuit court erred when it

1

denied his supplemental motion for leave to amend his complaint. Prystupa did not file that motion until after the circuit court dismissed his complaint with prejudice. Having reviewed the record, the arguments of counsel, and relevant precedent, we affirm the circuit court's rulings on both issues.

## Facts

¶2. Prystupa owned rental property in Rankin County in the PRV service area. When his tenant left in February 2018, Prystupa discovered water damage to the rental home from storm-water drainage. He contacted PRV and reported that he had seen two drains fail to collect and remove the water from the street. According to Prystupa, PRV building department employee Steve Clark came out twice and told Prystupa that his property sat at the lowest point of intersecting streets and that the curb and drain had sunk in the street. According to Prystupa, Clark told him to divert the water off the property by using berms or drains in the ground.

¶3. Prystupa hired a foundation repair company, Structural Solutions, which on March 20, 2018, assessed the damage to the rental home at $41,500 ($30,000 to raise the home and $11,500 to install adequate drainage). Prystupa claimed that he lost $1,300 per month in rental income for each month the property remained vacant.

¶4. On April 11, 2018, Prystupa submitted the bill for the water damage with a letter to PRV in which he claimed that the district was liable because the drain near the property "is collapsed and broken brick can be seen from outside the street." He noted that the culvert

was "sunken and not level with the street as is the norm with the surrounding drains" and that "the drain is obviously blocked." Prystupa said that he had repeatedly called PRV and requested that the drains be cleared, blown out and/or repaired, but PRV had done nothing.

¶5. According to PRV, Prystupa reported in June 2018 that Rankin County performed work on the storm drain and drainage ditch beside his property.

¶6. On August 1, 2018, Prystupa sent an email to PRV's attorney, Phillip Huskey, Mississippi Special Assistant Attorney General, to follow up on his claim. Huskey referred him to Lisa Wells of Cannon Cochran Management Services, Inc. (CCMSI), the claims administrator for PRV's insurance with the Mississippi State Tort Claims Board. On August 23, 2018, Wells emailed Prystupa saying that Rankin County was responsible for maintenance in his subdivision and that she trusted he had filed a claim with Rankin County "as she had previously suggested." She said that her investigation was not complete, but thus far, she had not found any negligence by PRV.

¶7. In September 2018, Prystupa contacted the Rankin County Road Department, which sent Dale Hill to visit the property. According to Prystupa, Hill saw water flow from three directions and "a blockage that prevented the water from the street to adequately drain." Hill reported this to the road manager who contacted the county engineer. They determined that the county did not have the right of way to perform the repairs needed to clear the blockage and that it was PRV's responsibility to do so. Hill communicated this to Prystupa and offered to contact PRV's building department to let it know where the blockage may be

3

located so that it could be cleared to prevent the flooding. In October 2018, Rankin County Road Supervisor Steve Harrison confirmed this information with Prystupa. He told Prystupa that Rankin County could only attempt repairs to the drain a few feet into the easement. After three to six feet, PRV had the right of way, and Rankin County was not allowed to conduct any repairs on the pipe beyond that. Prystupa said, "Steve Harrison also walked the ditch behind the property and saw where the culvert should be and he could tell the pipe was blocked because there was no outlet on the side of our property."

¶8. Prystupa reported his contacts with Rankin County and its findings to Lisa Wells via an October 31, 2018 email. He pressed his negligent maintenance claim against PRV.

¶9. According to Prystupa, in November 2018, Rankin County tried to help by creating a berm to divert some of the water but that did not fix the problem. Prystupa said he emailed Wells about the status of his claim several times thereafter.

¶10. On January 23, 2019, Wells sent Prystupa a certified letter denying the claim. She said that in 1988, Rankin County accepted several public roads and streets for maintenance, including the streets in his subdivision. She further said that Rankin County had the power to drain water off the public roads through and over the adjacent lands pursuant to Mississippi Code Annotated section 65-7-63 (Rev. 2012) and that a drainage easement existed on Prystupa's property.[1] In the letter, Wells noted that Prystupa had said in June that

_____

[1] In the complaint he filed later, Prystupa alleged that in 1977, PRV leased the use of its pipes to the Pelahatchie Woods Subdivision but reserved the right to have free access to the leased premises for inspection and maintenance. Prystupa also alleged that Rankin

4

Rankin County employees worked on the drainage culvert and ditch, and in October 2018, they made a small berm in the front yard to channel water to the storm drain. Wells specifically stated, "*The District did not perform any of this work, but did observe the interior of the storm drain with a camera in October, 2018. No blockages were found.*" (Emphasis added). Wells concluded that PRV employees were in no way responsible for the damages Prystupa sought.

¶11.   In response to Wells's letter, Prystupa emailed her and her supervisor at CCMSI, John Burns, on January 30, 2019, and requested a copy of the footage of PRV's video camera investigation. On February 5, 2019, Prystupa emailed Burns directly, again requesting the video camera footage. On that same day, Wells responded and referred Prystupa back to PRV, saying that it owned any such footage and she did not have a copy of it.

¶12.   On February 11, 2019, Prystupa emailed Huskey at the Mississippi Attorney General's office, asking him what he needed to do to obtain the video footage. Huskey replied on February 12, 2019, telling Prystupa that the maintenance crew viewed the footage in real-time and did not record it. Prystupa replied the same day, saying that he doubted what the crew may have seen because of his past experience with PRV's failure to unclog pipes.

¶13.   On March 13, 2019, Craig Slay, the attorney for the Rankin County Board of Supervisors, wrote Prystupa concerning the board's discussion of his drainage issue. Slay

County accepted the roads in the subdivision, which included their maintenance, and that a drainage easement existed on Prystupa's property so that the roads could be properly drained.

indicated that the county road manager, its consulting engineer, and the supervisor of the district where the property was located had visited the area. Based on their review, they concluded that the issue was the result of conditions associated with drainage infrastructure located outside the street or street right of way. Slay said that Rankin County had no legal authority to enter onto private property to repair the drainage problem.

¶14. The record contains no information about what, if anything, Prystupa did after March until June 2019, when he hired a plumbing company, Weiand Plumbing, Inc., which found that the storm drain behind his property was crushed. There is no written report of Weiand's findings other than an invoice for Weiand's service call which states "found that the storm drain is crushed behind [the] backyard."

¶15. Prystupa retained counsel in June 2019, but no notice of claim letters pursuant to the Mississippi Tort Claims Act (MTCA) were sent to PRV or Rankin County until October 17, 2019. He demanded $91,047.55 to repair the damages to the house and property, plus lost rent of $29,400, for a total of $120,447.55.

**Procedural History**

¶16. On March 2, 2020, Prystupa filed a complaint pursuant to the MTCA. He sought damages from both PRV and Rankin County for negligent maintenance of the drainage system. Prystupa asserted that his complaint was not barred by the statute of limitations because of the continuing tort doctrine, i.e. that the property has been and is continuously

6

damaged with each rain.[2]

¶17.    On March 30, 2020, and April 5, 2020, PRV and Rankin County each filed motions to dismiss on the grounds that Prystupa's claims were time-barred and the statute of limitations was not tolled by operation of the "discovery rule." In his response, Prystupa argued that the limitations period did not begin to run until June 6, 2019, the day Weiand told him that the drain was crushed.

¶18.    PRV and Rankin County noticed the motions to dismiss for hearing on May 27, 2020. Prior to the hearing date, on May 13, 2020, Prystupa filed a motion to amend his complaint to add claims for trespass and nuisance. PRV and Rankin County both responded on May 22, 2020, and argued that the proposed amendment was futile.

¶19.    Prystupa did not notice his motion to amend for hearing, and he never mentioned it during the May 27, 2020 hearing on PRV and Rankin County's motions. After hearing arguments of counsel, the circuit court dismissed Prystupa's complaint, finding that Prystupa knew of his injury in February and March 2018. The circuit court noted that even if the one-year MTCA statute of limitations began running on April 11, 2018, when Prystupa sent PRV notice of his damages, his March 2, 2020 complaint was untimely. The circuit court entered its dismissal order on June 4, 2020.

¶20.    On June 15, 2020, Prystupa filed a motion to alter or amend the judgment pursuant to Rule 59(e) of the Mississippi Rule of Civil Procedure. In it, he argued that PRV had

---

[2] Prystupa did not raise or argue continuing-tort tolling on appeal.

7

fraudulently concealed its involvement in the negligent maintenance of the drain when PRV indicated that a crew had used a camera to inspect the drain and said there was no blockage. He also filed a supplemental motion for leave to amend his complaint[3] on June 16, 2020, in which he sought to add allegations of fraudulent concealment and a takings claim based on the same facts alleged in the original complaint.

¶21. PRV and Rankin County responded to both motions, arguing that Prystupa had never asserted these claims until after the court had granted their motions to dismiss and that Prystupa was well aware of and was actively attempting to recover for his claims during the time of the alleged concealment. PRV and Rankin County also argued that Prystupa's motion failed because the case had been dismissed with prejudice, and the circuit court no longer had jurisdiction.

¶22. After a hearing on August 12, 2020, the circuit court denied Prystupa's Rule 59(e) motion and his supplemental motion to amend the complaint in a bench ruling and order. The order itself was brief, but the circuit court judge said this from the bench:

> There was a discovery of this, if I remember, in April of 2018. There were some e-mails, some letters sent. There was actually a notice of claim filed with Pearl River Valley at that time. You talked about the due diligence. There were some acts that were made by your client, but I don't think it rose to the level of due diligence in finding out really what it is. But at that time in 2018, he knew he had a problem. He made the allegation in the notice that, okay, Rankin County Board of Supervisors or Rankin County and Pearl River

---

[3] Prystupa had previously filed a motion for leave to amend his complaint to add claims of nuisance and trespass.

Valley, we've got a problem here and it's your fault.[4] And yet, of course, we've got a statute of limitations, and that statute of limitations ran. I don't think that either party was sitting there just looking at the clock tick away, but, of course, those parties do know what those statutes are. You're correct about that. But, you know, that's one of the reasons why I wish people would -- if he had gotten ahold of you quicker there might be a different outcome here. But I don't think I made a mistake in this. I looked back at it. I actually even told my staff attorney that if she felt like I needed to take another look at this I would be glad to do it, but the more I looked at it the more I was convinced that I did make the right decision on that, that the statute of limitations had run.

And as far as addressing your motion to amend the complaint, what you're asking for, let me go ahead and set aside my judgment to dismiss, then you can amend your complaint to do it like you wish you would have done it in the beginning. That's just not going to happen. . . .

It's obvious that he was aware of the injury. He even said I know whose fault it is; I'm sending this claim in. And if there's nothing filed, that statute is going to run.

¶23. After the circuit court denied both of Prystupa's post-dismissal motions, Prystupa appealed. He raises two issues: (1) whether the trial court erred as a matter of law by ruling that in this case the discovery rule did not toll the application of the MTCA's statute of limitations; and (2) whether the trial court abused its discretion by denying him leave to amend the complaint.

**Standard of Review**

¶24. "The circuit court's grant of a motion to dismiss based upon the statute of limitations presents a question of law to which this Court applies de novo review." *McNair v. J.F.M.,*

---

[4] It is unclear what "notice" the circuit court was referring to. Prystupa's April 10, 2018 letter was addressed to PRV only. However, on October 17, 2019, Prystupa sent MTCA notice of claim letters to both PRV and Rankin County.

*Inc.*, 323 So. 3d 1154, 1157 (¶7) (Miss. Ct. App. 2021) (quoting *Anderson v. R & D Foods Inc.*, 913 So. 2d 394, 397 (¶7) (Miss. Ct. App. 2005)). "The trial court's denial of a motion to amend a complaint is subject to an abuse of discretion standard of review." *Spiers v. Oak Grove Credit, LLC*, 328 So. 3d 645, 650 (¶10) (Miss. 2021) (quoting *Taylor Mach. Works, Inc. v. Great Am. Surplus Lines Ins. Co.*, 635 So. 2d 1357, 1362 (Miss. 1994)).

**Discussion**

**I.** **Whether Prystupa's negligence suit against PRV and Rankin County was barred by the statute of limitations.**

*A.* *Tolling*

¶25. On March 2, 2020, Prystupa filed his lawsuit for flooding that occurred on his property in 2018 due to the alleged failure of either PRV or Rankin County to maintain the drainage system. Prystupa argues that because his injury was latent, his statute of limitations for filing was tolled under the "discovery rule." We disagree.

¶26. Prystupa asserted a negligence claim under the MTCA, which has a one-year statute of limitations.[5] "A claim of negligence under the MTCA has the four general components

---

[5] The MTCA statute of limitations is found at Mississippi Code Annotated section 11-46-11(3)(a) (Rev. 2019):

> All actions brought under this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after, except that filing a notice of claim within the required one-year period will toll the statute of limitations for ninety-five (95) days from the date the chief executive officer of the state entity or the chief executive officer or other statutorily designated official of a political subdivision receives the notice of claim.

of any negligence claim: duty, breach, causation, and damages." *Calhoun v. Miss. Transp. Comm'n*, 314 So. 3d 181, 185 (¶17) (Miss. Ct. App. 2021) (quoting *Smith v. Harrison County*, 67 So. 3d 815, 819 (¶13) (Miss. Ct. App. 2011)). To determine whether Prystupa timely filed his case, we must determine when his statute of limitations began to run and if it was tolled.

¶27. Some statutes creating causes of action contain specific tolling provisions or language to assist in determining when a statute of limitations begins to run. For example, under Mississippi Code Annotated section 15-1-36(2) (Rev. 2019),[6] actions for medical negligence filed against non-public parties must be brought "within two (2) years from the date of the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered. . . ." For causes of action subject to a "catch-all" three-year statute of limitations, a tolling provision for latent injuries is found in Mississippi Code Annotated section 15-1-49(2) (Rev. 2019):

> In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

"A latent injury is defined as one where the plaintiff is precluded from discovery of the harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question, or when it is unrealistic to expect a layman to perceive the injury at the time of the

---

[6] The statute also includes a provision that tolls fraudulently concealed causes of action. Miss. Code Ann. § 15-1-36(2)(b).

wrongful act." *Reeg v. Keel*, 174 So. 3d 309, 313 (¶14) (Miss. Ct. App. 2015).[7]

¶28.   The MTCA does not contain a specific tolling provision, and with its one-year limitations period, it is not subject to the statutory tolling in section 15-1-49. But in *Barnes v. Singing River Hospital*, 733 So. 2d 199, 205 (¶19) (Miss. 1999), the Mississippi Supreme Court chose to incorporate a "discovery rule" into the body of MTCA law to toll actions for latent injuries brought under the MTCA. It said:

> Thus, where an injury or disease is latent, a determination of when the statute of limitation begins to run focuses not on the time of the negligent act or omission, but on when the plaintiff discovers the injury or disease. Moreover, knowledge that there exists a casual relationship between the negligent act and the injury or disease complained of is essential because it is well-established that prescription does not run against one who has neither actual nor constructive notice of facts that would entitle him to bring an action.

*Id*. at 204 (¶15) (internal quotations marks omitted).

¶29.   In *Caves v. Yarborough*, 991 So. 2d 142 (Miss. 2008), the supreme court articulated the reasoning for this judicially created tolling for MTCA actions and the difference between it and other statutory tollings. The Supreme Court examined language in the MTCA which specifically states that actions "shall be commenced within one (1) year next *after the date of the tortious, wrongful or otherwise actionable conduct*. . . ." *Id*. at 147 (¶18) (emphasis added) (quoting Miss. Code Ann. § 11-46-11(3)). After considering the meaning of the terms "tortious," "wrongful," and "otherwise actionable," the supreme court then concluded that, "in applying the statutory language of the MTCA, the statute of limitations for claims

---

[7] Latent injury will be discussed more fully in paragraphs 34 through 37.

thereunder begins to run when all the elements of a tort, or cause of action, are present." *Id*. at (¶22).

¶30.    The *Caves* court then discussed what a plaintiff had to discover to trigger the running of the MTCA statute of limitations, and noted that "not all discovery rules are created equal." *Id*. at 154 (¶48).   The supreme court said that in products liability cases, which apply the tolling of section 15-1-49(2), the cause of action accrues and the statute of limitations begins when the plaintiff can reasonably be held to have knowledge of his injury or disease.  *Id*. at (¶51).   In medical malpractice cases, a patient has two years to file from the date of the alleged act, omission, or neglect.  *Id*. at 154 (¶49).  Comparing the two, the supreme court noted that the medical negligence provision focused on the discovery of the date of the wrongful conduct, and section 15-1-49 focused on the date of discovery of the injury or disease.  *Id*. at 155 (¶52). To determine which should apply in MTCA tolling, the Court relied on *Barnes* and held that "the limitations period for MTCA claims does not begin to run until all the elements of a tort exist, and the claimant knows or, in the exercise of reasonable diligence, should know of both the injury and the act or omission which caused it."  *Id*. at (¶53).

¶31.    In a recent MTCA medical negligence case, the supreme court cited *Caves* and again said that the focus of the MTCA discovery rule is not on the date of a specific diagnosis, "but rather the date on which the plaintiff knew or should have known she was injured and that defendant's negligent conduct caused the injury."  *McLeod v. Millette*, 301 So. 3d 568, 574

13

(¶19) (Miss. 2020). Moreover, "the discovery rule will toll the statute of limitations until a plaintiff should have reasonably known of some negligent conduct, even if plaintiff does not know with absolute certainty that the conduct was legally negligent." *Id*. at 573 (¶19) (internal quotation marks omitted).

¶32.　　Even before *Caves*, the supreme court applied these principles that a cause of action is tolled until a plaintiff knew of his injury and its suspected cause in a property flooding case brought under the MTCA. *Punzo v. Jackson County*, 861 So. 2d 340 (Miss. 2003). In that case, Punzo's home first flooded in 1995, then twice in 1998. *Id*. at 342 (¶5). On September 9, 1999, Punzo sent a notice of claim to the county and filed suit on December 8, 1999. *Id*. at 342-43 (¶7). The county filed a motion for summary judgment based on the one-year statute of limitations, and Punzo responded that the MTCA discovery rule applied, tolling the statute of limitations. *Id*. at 343 (¶8). He said he had no way of knowing that the county was responsible for the flooding on his property until September 12, 1998, when a neighbor and a former county supervisor told him of the county's 1991 modification to a nearby bridge which Punzo then learned caused his flooding.[8] *Id*. at 344 (¶14). On appeal, the supreme court noted that Punzo filed suit within one year of his discovery of the potential cause of his flooding. *Id.* at 346 (¶21). Quoting *Barnes*, the supreme court said that when the injury is latent, the focus is on the plaintiff's discovery of it, along with the knowledge of a causal

---

[8] Until this time, Punzo's flooding had coincided with hurricanes which led him to believe the flooding had natural causes. *Id*. at 342-43 (¶¶5-6).

14

relationship between it and some negligent act. *Id*. at 344 (¶16). The supreme court said:

> There may be rare cases where the patient is aware of his injury prior to the expiration of the limitations period, but does not discover and could not have discovered with reasonable diligence the act or omission which caused the injury. In such cases, the action does not accrue until the latter discovery is made.

*Id*. at 346 (¶19) (quoting *Smith v. Sanders*, 485 So. 2d 1051, 1052-53 (Miss. 1986)). The supreme court held that one flood did not create enough notice of an actionable claim's existence or someone's fault. *Id*. at (¶20). The supreme court also held that six months after his third flood in September 1998, Punzo learned of the alleged cause, gave notice, and timely filed suit. *Id*.

¶33. Even though statutory tolling under section 15-1-49 and MTCA judicially-created tolling are both referred to as "discovery rules," it is important to apply the correct discovery rule depending on the cause of action pleaded. The statute of limitations begins to run on MTCA actions when a plaintiff knew or should have known of his injury and the wrongful act(s) that caused it. This should not be confused with statutory tolling under section 15-1-49, which requires knowledge of the injury alone. The supreme court made this clear in *Tupelo v. O'Callaghan*, 208 So. 3d 556 (Miss. 2017), where O'Callaghan brought an inverse condemnation claim under the Takings Clause of the Mississippi Constitution. *Id*. at 558 (¶1). The supreme court held that a takings claim was subject to the three-year statute of limitations under section 15-1-49. *Id*. at 568 (¶35). In discussing when the statute of limitations began to run, the court said that under section 15-1-49, "the proper inquiry . . .

15

was no longer the discovery of the causative relationship between the action and the injury, but the discovery of the injury itself." *Id*. at 569 (¶37) (internal quotation marks omitted). The court noted that a claim such as the one in *Punzo*, which was filed under the MTCA rather than a constitutional-takings claim, "has a different limitations statute and a different discovery rule." *Id*. at n.12. Thus, in Prystupa's MTCA negligence claim, his statute of limitations is to be assessed under MTCA tolling, which looks at when the plaintiff knew or should have known of both the injury and its probable cause, and not tolling under section 15-1-49, which looks only at when the plaintiff knew or should have known of his injury.

### B. Latent Injury

¶34. Prystupa acknowledges that his MTCA complaint was subject to the one-year statute of limitations, and he admits that he was aware of his injury through property flooding within that one year. But he claims that it was a "latent" injury that would extend the statute of limitations because he did not know the precise cause of the flooding—a broken pipe—until his plumber expert found it in June 2019. However, neither the law nor the record supports his argument.

¶35. As noted above a latent injury is one in which a duly diligent plaintiff could not discover his harm or injury. "In its most simplistic form, if aggrieved persons do not know of their injury the statute of limitation does not begin running until they 'can reasonably be held to have knowledge of the injury or disease.'" *PPG Architectural Finishes Inc. v. Lowery*, 909 So. 2d 47, 50 (¶9) (Miss. 2005) (quoting *Owens-Illinois Inc. v. Edwards*, 573

16

So. 2d 704, 709 (Miss. 1990)). In *Lowery*, the supreme court went on to say that "[f]or an injury to be latent it must be undiscoverable by reasonable methods." *Id*. at 51 (¶14). The supreme court "noted that some plaintiffs may require access to medical records to discover the injury." *Id*. (citing *Sarris v. Smith*, 782 So. 2d 721, 725 (¶12) (Miss. 2001)). Still "others might gain enough actual knowledge through personal observation or experience." *Id*. (citing *Robinson v. Singing River Hosp*., 732 So. 2d 204, 208 (¶17) (Miss. 1999)).

¶36. Instructive for this case are appellate court decisions that have dealt with alleged latent property damage injury cases. In *Sims v. Bear Creek Water Association*, 923 So. 2d 230 (Miss. Ct. App. 2006), the Simses noted wet spots in their yard and contacted their water association. *Id*. at 231 (¶1). The association said that their lines were working properly and that the Simses were responsible for any problems between the meter and the house. *Id*. In June 1999, the association examined the waterlines again and Mrs. Sims observed water spewing upward from a break in the main line. *Id*. at (¶2). The Simses contacted an engineer who reported in July 1999 that the movement of the home's foundation may not have been totally due to the break in the water line, but that some of the movement was. *Id*. at 231-32 (¶2). On August 6, 2001, the engineer issued a second report determining that the water leak did cause the Simses' foundation to move, and the Simses filed suit on September 9, 2002. *Id*. at 232 (¶3). The trial court dismissed their case with prejudice, finding that the statute of limitations had expired, *id*. at (¶4), and on appeal we agreed. *Id*. at 233 (¶10). We held that the Simses knew about the problem with their foundation and the line leak's contributing

cause in July 1999 when they observed the spewing water from the line and by the engineer's first report which was issued before the statute of limitations ran. *Id.* at (¶¶8-10).

¶37. In another property flooding case, *Milam v. Kelly*, 282 So. 3d 682 (Miss. Ct. App. 2019), we reviewed *Punzo* and these subsequent appellate court decisions regarding tolling of a statute of limitations when claims of latent injury are made. Like *Sims*, the cause of action on appeal in *Milam* was his complaint against his neighbors for trespass and the court determined whether Milam's claim was tolled under section 15-1-49. *Id*. at 686 (¶12). On appeal of the circuit court's finding that Milam's statute of limitations was not tolled, this Court reiterated that statutory tolling does not apply unless the injury is latent—when a "plaintiff is precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question or when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *Id*. at 688 (¶¶18-19) (internal quotation mark omitted). We specifically said that "[i]f a latent injury is not present, the discovery rule would not apply," *id.* at (¶19), and that it is "[t]he specific facts of a case [that] determine whether a plaintiff knew or reasonably should have known that an injury existed." *Id*. at (¶20).

¶38. We reiterated this principle in *Sturdivant v. Coahoma County*, 303 So. 3d 1124, 1126 (¶1) (Miss. Ct. App. 2020), where we held that a landowner's lack of access to water for her property was not a latent injury and did not toll the three-year statute of limitations for inverse condemnation claims. We said:

There is no "bright line rule" as to whether an injury is latent or not; it depends on whether the plaintiff knew or reasonably should have known that an injury existed which in turn depends on the specific facts of the case. In determining whether a plaintiff knew or should have reasonably known he had an injury, the court considers the actions taken by the plaintiff.

*Id*. at 1132 (¶28) (citations and internal quotations marks omitted).

### C. *Prystupa's Claims of Tolling and Latent Injury*

¶39. "The question of whether a statute of limitation is tolled by the discovery rule turns on the factual determination of what the plaintiff knew and when." *McLeod*, 301 So. 3d at 574 (¶20). Examining Prystupa's actions and knowledge in light of the precedent cited above, we find that unlike *Punzo*, Prystupa was aware of his injury (the flooding of his property) and of its cause (drainage blockage due to the negligent failure to maintain the drainage system by either Rankin County or PRV) by late March 2018, and certainly by April 10, 2018. Prystupa himself noted in the April 2018 claim letter he sent to PRV that he had experienced flooding for a number of reasons, including an "obviously blocked drain." Thus, his injury (flooding to his property) was not latent. Prystupa had also clearly determined by that time that the blockage in the drainage system was the result of a lack of inspection and/or maintenance by either Rankin County or PRV. Prystupa contacted both in the spring of 2018 and had continued contacts with both thereafter. In September 2018, Rankin County confirmed the drain blockage and even identified its location although it claimed it could not repair the pipe because it was not on Rankin County's right of way. In January 2019, PRV wrote to Prystupa giving him the rationale for its position that any repair was Rankin

19

County's responsibility, while also claiming that it had found no blockage. At that point, the two potential wrongdoers were pointing fingers at each other for responsibility of Prystupa's injury when there was still four months left on Prystupa's one-year statute of limitations. He could have sent any additional notices and/or filed suit at that time.[9] Unlike the plaintiff in *Punzo*, who initially thought his flooding was natural, Prystupa knew his was not, and that it was caused by a negligent lack of maintenance by one of two parties. Thus, under the principles of MTCA tolling, Prystupa knew of his injury and its cause in April 2018. Because he had knowledge of all the elements of his claimed tort, the statute of limitations on his claim began to run at that time and was not tolled.

¶40. Prystupa argues that he could not file suit until June 2019 when he discovered that a crushed pipe was the cause of the drain blockage. However, Prystupa knew he had flooding from a blocked drain, among other things, in April 2018. He admitted that he observed heavy flows of water due to the failure to repair the "pipe, culvert, or ditch" behind the property. In his April 2018 letter to PRV he said that the drain to the property was collapsed and that the "drain is obviously blocked." This was confirmed for him and the blocked pipe's location was even identified by county personnel in September 2018. Prystupa had no more information in June of 2019 than he had in September 2018. But he did not file a lawsuit until March 2, 2020. Accordingly, we find that Prystupa's injury was not latent and

---

[9] Prystupa could have filed suit against PRV based on what Rankin County told him in September 2018, and definitely by March 2019, when Rankin County reiterated its position that there was a blockage but it could not make any repair.

because Prystupa knew of his injury and the alleged negligence that caused it, the one-year statute of limitations was not tolled by the MTCA discovery rule.

### D. Calculation of Statutes of Limitations

¶41. Having determined that there was no tolling of Prystupa's claims, we next determine when Prystupa's statute of limitations expired against PRV and then against Rankin County. Because both are governmental entities, Prystupa's claims were subject to a one-year statute of limitations. Here, Prystupa knew of the flooding in February 2018 and had an assessment of his damage prepared in March 2018. At that time, he suspected that either PRV or Rankin County, both MTCA entities, caused his damage due to their negligent maintenance of the drainage system. Giving Prystupa the benefit of the doubt as did the circuit court, the MTCA one-year statute of limitations for filing suit began to run at the latest by April 10, 2018, and expired on April 10, 2019. The deadline for filing suit, however, depended upon when, during that one year period, the notice of claim letters were sent and the tolling for giving notice that the statute provides.

¶42. Section 11-46-11(3)(a) tolls the one year for a maximum of ninety-five days after notice is given. Section 11-46-11(3)(b) provides:

> No action whatsoever may be maintained by the claimant until the claimant receives a notice of denial of claim or the tolling period expires, whichever comes first, after which the claimant has an additional ninety (90) days to file suit.

Prystupa's attorney sent a formal notice of claim to PRV on October 17, 2019. That notice letter was clearly sent after the expiration of the one-year statute of limitations that had begun

21

in April 2018. Using that notice, Prystupa's suit against PRV would be barred. Unfortunately, even using Prystupa's April 10, 2018 letter as his notice of claim, Prystupa's suit against PRV was still barred. Applying the ninety-five day tolling for notice, Prystupa's claim against PRV was tolled from the April 10, 2018 notice until Monday, July 16, 2018. Extending the statute of limitations an additional ninety days for filing, Prystupa then had until October 14, 2019, to file suit. He failed to do so. Accordingly, his March 2, 2020 complaint against PRV was untimely.

¶43. His claims against Rankin County were also barred because he sent no notice of a claim during the one-year statute of limitations period. Prystupa knew that there was flooding on his property because of blockage of a drain in his yard by April 2018 at the latest. In August 2018, Wells encouraged Prystupa to file a claim with Rankin County in addition to his claim against PRV. But he did not. In September 2018, county personnel identified the location of the blockage but claimed it was outside the boundaries of Rankin County's easement. However, on January 23, 2019, Wells contradicted Rankin County, saying that it had the authority to repair the damaged pipe. The plumber's determination in June 2019 that the pipe was crushed did nothing to resolve the issue of who had the authority and responsibility to repair the pipe at that location. Prystupa did not send a notice of claim to Rankin County until October 17, 2019, long after the one-year statute of limitations had lapsed. He did not file suit until March 2, 2020. Accordingly, the circuit court did not err in determining that Prystupa's claims against Rankin County and PRV were barred by the

22

statute of limitations.

**II. Whether the circuit court erred in denying Prystupa's Rule 59(e) motion and his supplemental motion for leave to amend his complaint.**

¶44. Prior to the circuit court's dismissal of his complaint, Prystupa filed a motion for leave to amend it to add claims of nuisance and trespass. However, Prystupa did not notice his motion for hearing and failed to mention it the hearing on PRV and Rankin County's motions to dismiss.[10] Eleven days after the circuit court dismissed the complaint with prejudice, Prystupa filed a motion to alter or amend its judgment pursuant to Mississippi Rule of Civil Procedure 59(e).[11] In his motion, Prystupa argued that PRV had fraudulently concealed evidence of its negligence. The day after he filed his Rule 59(e) motion, Prystupa filed a supplemental motion to amend which included the substance of his first motion to amend (to add claims of nuisance and trespass) and an added request to plead fraudulent concealment and a cause of action for inverse condemnation or taking. After denying Prystupa's Rule

_____

[10] Prystupa's first motion for leave to amend his complaint could be viewed as abandoned. Under Rule 2.04 of the Uniform Rules of Circuit and County Court Practice, the movant has a duty to pursue a motion to hearing and decision. "Failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion." URCCC 2.04. This applies to a motion to amend a complaint. *See Harrison v. B.F. Goodrich Co.*, 881 So. 2d 288, 293 (¶23) (Miss. Ct. App. 2004) (plaintiff's motion to amend filed while motion for summary judgment was under advisement but not noticed or brought to the court's attention was seen as abandoned); *see also Illinois Cent. R.R. Co. v. Moore*, 994 So. 2d 723, 727 n.9 (Miss. 2008) (failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion).

[11] Motions to alter or amend a judgment must be filed within ten days after the judgment is entered. M.R.C.P. 59(e). Prystupa's motion was timely filed because the tenth day after the judgment was entered fell on a Sunday. *See* M.R.C.P. 6(a).

59(e) motion, the circuit court also denied Prystupa's supplemental motion to amend his complaint. On appeal, Prystupa argues that the circuit court erred in denying both motions.

### A. Denial of Motion to Alter or Amend Judgment

¶45. To prevail on a Rule 59(e) motion, Prystupa needed to show "(i) an intervening change in controlling law, (ii) [the] availability of new evidence not previously available, or (iii) [the] need to correct a clear error of law or to prevent manifest injustice." *Brooks v. Robertson*, 882 So. 2d 229, 233 (¶15) (Miss. 2004). Prystupa argued that the circuit court should grant his Rule 59(e) motion to prevent a manifest injustice. On appeal, he frames the "injustice" as the refusal to allow him to assert a new takings claim which is governed by a three-year statute of limitations. However, in the Rule 59(e) motion that he presented to the trial court, Prystupa only argued that the manifest injustice arose based on his allegation that PRV fraudulently concealed claim. According to Prystupa, PRV's concealment occurred when it told him that its maintenance personnel sent a camera through the system and determined that the drain was not clogged, when in fact Prystupa later learned that a pipe was crushed. Prystupa did not argue to the circuit court that he had a takings claim and that to deny it would be manifestly unjust.

¶46. The circuit court did not err when it denied Prystupa's Rule 59(e) motion. The circuit court had correctly found that Prystupa's MTCA claims of negligence were barred by the statute of limitations. Prystupa never asserted that the statute of limitations was tolled because of any alleged fraudulent concealment by PRV until he filed his Rule 59(e) motion.

24

But the information he based his allegation upon was not newly discovered. He knew about it before he filed his complaint and responded to the motions to dismiss.

¶47. Moreover, "to prove fraudulent concealment, the plaintiff must show (1) the defendant engaged in an affirmative act or conduct designed to prevent, and which does prevent, discovery of a claim, and (2) due diligence was performed on the plaintiff's part to discover the defendant's fraud." *Neyland v. Timberland Mgmt. Servs. Inc.*, 167 So. 3d 1272, 1278 (¶20) (Miss. Ct. App. 2014) (citing *Stephens v. Equitable Life Assurance Soc'y of the U.S.*, 850 So. 2d 78, 83-84 (¶18) (Miss. 2003)). Prystupa provided no evidence that PRV's maintenance crew had *not* checked the line or that PRV intended to prevent him from discovering his cause of action and miss the statute of limitations. Additionally, the record shows that even if Prystupa suspected that PRV was lying about its investigative efforts in January 2019, he still learned in June 2019 that the drain was crushed. That was well before the statute of limitations expired in October 2019. Thus the circuit court did not abuse its discretion when it denied Prystupa's Rule 59(e) motion.

### B.     *Denial of Supplemental Motion to Amend Complaint*

¶48. Prystupa also argues that the circuit court erroneously denied his supplemental motion to amend his complaint to include a takings claim. Again, we disagree.

¶49. "Motions for leave to amend a complaint are left to the sound discretion of the trial court." *Webb v. Braswell*, 930 So. 2d 387, 392 (¶8) (Miss. 2006). "This Court reviews such determinations under an abuse of discretion standard and unless convinced that the trial judge

25

abused his discretion, we are without authority to reverse." *Warnock & Assocs. LLC v. Canton*, 328 So. 3d 1254, 1265-66 (¶31) (Miss. Ct. App. 2021). Although motions to amend have been liberally granted, leave to amend is conditioned on "the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Webb*, 930 So. 2d at 393 (¶9). Additionally, "[a]pplications to amend the pleadings should be prompt and not the result of lack of diligence." *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 991 (¶64) (Miss. 2004).

¶50. We encountered a situation similar to Prystupa's in *Lampkin v. Thrash*, 81 So. 3d 1193 (Miss. Ct. App. 2012). In that case, homeowners (the Lampkins) sued their construction company (Thrash) for negligence and breach of warranty in the construction of their home. *Id*. at 1194-95 (¶1). The home was built in 1999 and started shifting and developing cracks in 2000. *Id*. at 1195 (¶2). The Lampkins hired engineers over the years who advised them to make different repairs. *Id*. at (¶¶3-4). When the foundation deterioration continued, the Lampkins finally sued Thrash in 2010, and they later asserted that they delayed filing suit "because [the owner] Thrash continued to represent that he would improve the property." *Id*. at (¶5). Thrash filed a motion to dismiss based on the expiration of the applicable six-year statute of repose. *Id*. at (¶6). Finding that the statute of repose had expired, the circuit court granted Thrash's motion. *Id*. The Lampkins then filed a motion

to reconsider and a motion to amend. *Id*. The circuit court denied both. *Id*. On appeal, after finding that the circuit court had not erred in finding the case barred by the statute of repose, *id*. at 1198 (¶17), we reviewed its denial of the Lampkins' motion for reconsideration and motion to amend their complaint. *Id*. at 1199 (¶20). We treated the motion for reconsideration as a motion to amend the judgment and reviewed it under an abuse-of-discretion standard. *Id*. at (¶21). Thrash argued that the case had been dismissed with prejudice, so there was nothing to amend, noting that the motion to amend to include a fraudulent-concealment claim was made after the case had been barred by the statute of limitations. *Id*. at (¶22). The Lampkins countered that they sought reconsideration and amendment of the complaint in order "to achieve justice." *Id*. We found that the motion for reconsideration and motion to amend the complaint "failed to direct the circuit court's attention to any new evidence not previously available in the two prior complaints, and the motions also failed to provide any errors of law or show manifest injustice." *Id*. at 1200 (¶23). We found that the circuit court did not abuse its discretion when it denied both motions. *Id*.

¶51.    Prystupa's procedural history is similar in that he did not raise fraudulent concealment or the new takings claim until after the motion to dismiss had been granted. Prystupa gives no reason why these claims could not have been raised prior to dismissal. Prystupa filed an initial motion to amend his complaint when PRV and Rankin County filed their motions to dismiss on statute-of-limitations grounds. But in that motion, Prystupa only sought to add

27

claims for nuisance and trespass. At the hearing on the motions to dismiss, Prystupa failed to bring up the issue of a possible takings claim. He only asserted it after his complaint had been dismissed. We cannot say that Prystupa diligently pursued his takings claim. The circuit court did not abuse its discretion in denying Prystupa's supplemental motion to amend his complaint after the case had been dismissed.

## Conclusion

¶52. We find that the MTCA statute of limitations was not tolled for reasons stated above and that the circuit court did not err in dismissing Prystupa's MTCA case as untimely filed. In addition, we hold that the circuit court did not abuse its discretion in denying Prystupa's Rule 59(e) motion or his supplemental motion for leave to amend his complaint.

¶53. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE AND SMITH, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., NOT PARTICIPATING.**